## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE WOLK LAW FIRM a/k/a ARTHUR ALAN WOLK ASSOCIATES<br>1710-12 Locust Street<br>Philadelphia, PA 19103 | : : : : : | |
| and | : : | |
| CYNTHIA C. GAMBLE, Individually and as executrix of the Estate of David F. Gamble<br>1307 Clover Lane<br>Greensboro, NC 27410 | : : : : : | CIVIL ACTION NO. _____ |
| and | : : | |
| PAUL HABER<br>43 Alexis Boulevard<br>Toronto, ON M3H 2P5 | : : : : | |
| and | : : | |
| CATHERINE KELLY, Individually and as executrix of the Estate of Bernard Kelly and the Estate of Leanna Kelly<br>9502 Frederick Road<br>Ellicott City, Maryland 21042 | : : : : : : | |
| and | : : | |
| LINDA JENNY, Individually and as executrix of the Estate of David Jenny<br>89 Ealer Hill Road<br>Kintersville, Pennsylvania 18930 | : : : : : | |
| and | : : | |
| VINCENT MOW<br>1420 Gabriel Drive, Unit 2<br>Waukesha, WI  53188-3653 | : : : : : | |
| v. | : : : : : | |

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
|   NATIONAL TRANSPORTATION SAFETY | : |
|   BOARD | : |
| 490 L'Enfant Plaza, SW | : |
| Washington, DC 20594 | : |

## COMPLAINT – CIVIL ACTION FOR INJUNCTIVE RELIEF

### THE PARTIES

    1.    Plaintiff The Wolk Law Firm a/k/a Arthur Alan Wolk Associates, is a law firm, an S-Corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1710-12 Locust Street, Philadelphia, Pennsylvania and is the issuer of Freedom of Information Act ("FOIA") requests to the Unites States of America, National Transportation Safety Board ("NTSB") on behalf of certain clients.  The Wolk Law Firm is also the issuer of other requests to the NTSB pursuant to Title 49 of the Code of Federal Regulations, Part 837 on behalf of certain clients.

    2.    The Wolk Law Firm was retained to investigate the circumstances of the April 21, 2012 crash of a Cirrus SR22 aircraft bearing United States registration N110EB (the "N110EB Crash").  The investigation of the N110EB Crash was assigned NTSB identification number CEN12FA251.

    3.    All other named Plaintiffs in this action are represented by Plaintiff The Wolk Law Firm which, as agent and counsel for Plaintiffs, has submitted document requests and requests for evidentiary inspections through the normal and usual processes including FOIA and 49 C.F.R. Part 837.

    4.    Plaintiff Cynthia C. Gamble is a citizen and resident of the State of North Carolina and is the duly appointed executrix of the Estate of David F. Gamble, who was killed in the January 13, 2013 crash of a Pilatus PC-12 aircraft bearing United States registration N68PK

(the "Gamble Crash"). The investigation of the Gamble Crash was assigned NTSB identification number ERA13FA115.

5. Plaintiff Paul Haber is a citizen and resident of Canada who was severely injured in the April 30, 2011 crash of a Robinson R-44 II helicopter bearing United States registration N445AB (the "Haber Crash"). The investigation of the Haber Crash was assigned NTSB identification number ERA11FA272.

6. Plaintiff Catherine Kelly is a citizen and resident of the State of Maryland and is the duly appointed executrix of the Estate of Bernard Kelly and the Estate of Leanna Kelly, who were killed in the July 27, 2013 crash of a Robinson R-66 helicopter bearing United States registration number N646AG (the "Kelly/Jenny Crash"). The investigation of the Kelly/Jenny Crash was assigned NTSB identification number ERA13FA336.

7. Plaintiff Linda Jenny is a citizen and resident of the Commonwealth of Pennsylvania and is the duly appointed executrix of the Estate of David Jenny, who was killed in the July 27, 2013 crash of a Robinson R-66 helicopter bearing United States registration number N646AG (the "Kelly/Jenny Crash"). The investigation of the Kelly/Jenny Crash was assigned NTSB identification number ERA13FA336.

8. Plaintiff Vincent Mow is a citizen and resident of the State of Wisconsin who was severely injured in the December 23, 2012 crash of a Piper PA-28R-200 aircraft with United States registration N2074T (the "Mow Crash"). The investigation of the Mow Crash was assigned NTSB identification number ERA13LA097.

9. Defendant The United States of America, National Transportation Safety Board ("NTSB,") is a governmental entity organized and existing pursuant to Title 49 of the United

States Code and is charged with investigating civil aircraft accidents pursuant to 49 U.S.C. § 1132.

**JURISDICTION**

10. This Honorable Court has jurisdiction over this civil action arising under the Constitution, laws, or treaties of the United States and the various agencies thereof including the NTSB pursuant to 28 U.S.C. § 1331.

**VENUE**

11. The United States District Court for the Eastern District of Pennsylvania is the appropriate venue pursuant to 28 U.S.C. § 1402(b) in that Plaintiff The Wolk Law Firm is a resident of that district and an attorney who seeks information on behalf of a client is a proper party to a civil action.

12. The United States District Court for the Eastern District of Pennsylvania is the appropriate venue pursuant to 28 U.S.C. § 1402(b) in that Plaintiff Linda Jenny is a resident of that district.

**NATURE OF THE ACTION**

13. This is a civil action brought against the NTSB pursuant to claims of obstruction of justice and violations of due process, as well as statutory violations of the Freedom of Information Act, 5 U.S.C. §552, as amended. Plaintiffs seek to enjoin the NTSB to retrieve, review and release documents and evidence which Plaintiffs requested from the NTSB, which are within its possession, custody and/or control.

**FACTS REGARDING PLAINTIFFS' REQUESTS TO THE NTSB**

**GAMBLE PLAINTIFF**

14. Plaintiff Cynthia Gamble, as executrix of the Estate of David Gamble, retained Plaintiff The Wolk Law Firm to investigate the Gamble Crash.

15. On behalf of Plaintiff Cynthia Gamble, Plaintiff The Wolk Law Firm issued FOIA Request No. FOIA-2014-00006 to the NTSB seeking documents, evidence and data related to the NTSB's investigation of the Gamble Crash.

16. After FOIA Request No. FOIA-2014-0006 was denied, Plaintiff The Wolk Law Firm negotiated with the NTSB General Counsel's office which provided some evidence of the crash but has wrongfully withheld other evidence.

17. The NTSB failed to produce information requested by FOIA-2014-00006 and, after more than 18 months, the NTSB has failed to release records, documents, factual reports, public dockets, or any other information related to the investigation of the Gamble Crash.

**THE N110EB CRASH**

18. Plaintiff The Wolk Law Firm issued FOIA Request No. FOIA-2014-00004 to the NTSB seeking documents, evidence and data related to the NTSB's investigation of the N110EB Crash.

19. After FOIA Request No. FOIA-2014-0004 was denied, Plaintiff The Wolk Law Firm negotiated with the NTSB General Counsel's office which provided some documents about the N110EB Crash only upon the condition of confidentiality until such time as the NTSB made them public. The NTSB General Counsel's office anticipated making these documents public in January 2014 and, as of the time of the filing of this lawsuit, they have not been made public.

The NTSB General Counsel's office also released some wreckage evidence of the N110EB Crash, but has wrongfully withheld other evidence.

20. The NTSB failed to produce information requested by FOIA Request No. FOIA-2014-00004 and, after more than two years and extensive negotiations, the NTSB has failed to release records, documents, factual reports, public dockets, or any other information related to the investigation of the N110EB Crash.

### HABER PLAINTIFF

21. Plaintiff Paul Haber retained Plaintiff The Wolk Law Firm to investigate the Haber Crash.

22. On behalf of Plaintiff Paul Haber, Plaintiff The Wolk Law Firm issued FOIA Request No. FOIA-2011-00174 to the NTSB seeking documents, evidence and data related to the NTSB's investigation of the Haber Crash.

23. Subsequently, on August 7, 2014, the parties to the Haber litigation jointly submitted an affidavit in support of the request for the release of the full NTSB docket, and specifically including the video which was taken on board the accident helicopter.

24. The NTSB almost immediately then produced the NTSB docket and factual report for the accident, however glaringly missing was the video which was several times requested from the NTSB of the accident flight. The video in question is both a document and physical evidence of the Haber Accident.

### KELLY/JENNY PLAINTIFFS

25. Plaintiffs Catherine Kelly and Linda Jenny retained Plaintiff The Wolk Law Firm to investigate the Kelly/Jenny Crash.

26. On behalf of Plaintiffs Catherine Kelly and Linda Jenny, Plaintiff The Wolk Law Firm issued a request on February 21, 2014 to the NTSB to permit Rolls Royce to release the raw data from the Engine Monitoring Unit from the accident helicopter. This was denied.

27. Plaintiffs again requested this data on June 11, 2014, in the form of an affidavit stating the necessity for the Engine Monitoring Unit Data. The affidavit conformed with the request requirements contained within 49 C.F.R Part 837. This was denied on June 30, 2014.

28. Despite the Kelly/Jenny crash occurring over a year ago, the requested data has not been released, and Plaintiffs' investigation of this crash has been severely impaired.

**MOW PLAINTIFF**

29. Plaintiff Vincent Mow retained Plaintiff The Wolk Law Firm to investigate the Mow Crash.

30. On behalf of Plaintiff Vincent Mow, on February 11, 2014, Plaintiff The Wolk Law Firm issued a request to the NTSB General Counsel requesting the release of evidence and documents related to the Mow Crash.

31. The NTSB responded that it required an affidavit pursuant to 49 C.F.R. § 837.4(b)(2) and Plaintiff The Wolk Law Firm sent the required affidavit on March 11, 2014. After more than five months, the NTSB has failed to release evidence, records, documents, factual reports, public dockets, or any other information related to the investigation of the Mow Crash.

**BACKGROUND OF THE NTSB AND ITS PROCEDURES**

32. The NTSB is charged with the investigation of civil aviation accidents pursuant to 49 U.S.C. § 1132. The NTSB, according to its own regulation, 49 C.F.R. § 830.10(b), takes

custody of aircraft wreckage and other evidence, including photographic evidence, after an accident.

33. Plaintiffs, the victims of aviation crashes and their agents, are not permitted to view, preserve, collect or otherwise document the accident site, the wreckage, or any other evidence pursuant to NTSB regulation 49 C.F.R. § 831.12

34. The NTSB, during its investigation of airplane crashes and pursuant to its own regulation, 49 C.F.R. § 831.11, relies principally upon the manufacturers of civil aircraft and aircraft components to provide the required technical expertise to complete the required investigation.

35. The NTSB's reliance upon manufacturers of civil aircraft and aircraft components creates a conflict of interest where the manufacturers are tasked with providing the technical expertise for the investigation of failures in their own products.

36. The NTSB's reliance upon manufacturers of civil aircraft and aircraft components creates a situation where manufacturers are afforded early and exclusive access to crash evidence while victims of aviation crashes are wholly excluded from the investigation process as well as evidentiary collection and preservation efforts.

37. The NTSB affords manufacturers and their representatives editing and/or approval power over the NTSB's "factual" reports.

38. The NTSB affords manufacturers and their representatives control over the disposition of evidence, including power and authority over the time and disposition of the release of critical evidence to crash victims.

39. Upon information and belief, Investigators and others employed by the NTSB collude with manufacturers and, upon their departure from government employment, most often

accept employment defending the aircraft and component manufacturers whom they were previously tasked to investigate.

40. The conflict of interest and collusion that is inherent in the so-called "party system" employed by the NTSB has been well documented in litigation and publications including, but not limited to, an independent study of NTSB processes conducted by the Rand Corporation entitled "Safety in the Skies" and was discussed in a six-part article in the newspaper "USA TODAY" on June 18, 2014 entitled "Unfit for Flight."

41. Various statutes of limitation in the several states bar crash victims' claims against aircraft and component manufacturers and other putative defendants after the expiration of certain time periods.

42. Even if litigation is commenced within the statutory period of limitations, the NTSB continues to withhold, conceal, obfuscate and obstruct justice from the parties by maintaining custody of the evidence to the benefit of the party participants, the aircraft and component manufacturers and putative or actual defendants in litigation. The NTSB's wrongful withholding is to the detriment and prejudice to the crash victims and their families.

43. The NTSB does not release evidence for investigation by crash victims unless and until the manufacturers, who are putative or actual defendants, have authorized such a release.

44. The NTSB persists in a course of conduct designed to prevent Plaintiffs from obtaining material information and evidence critical to preserving their rights under the United States Constitution.

45. The NTSB's course of conduct that prevents Plaintiffs from obtaining material information and evidence persists even though the NTSB has no reason to retain the material

information and/or evidence other than to thwart Plaintiffs' own investigations and to obstruct litigation against liable parties.

46. Plaintiffs here have all been injured as a result of the NTSB's processes, procedures and performance because they have been prevented access to critical documents, data and evidence of plane crashes that have resulted in severe injury to themselves or the death of a family member, and the NTSB has continually denied them access to any remedy.

## COUNT I
### *Obstruction of Justice and Violation of Due Process*

47. Plaintiffs fully incorporate by reference paragraphs 1 through 46 herein.

48. The NTSB, through its officers, employees and/or its agents, including party participants, acted and continues to act with intent to avoid, evade, prevent and/or obstruct the timely investigation of airplane crashes.

49. The NTSB, through its officers, employees and/or its agents, including party participants, did and does delay the investigations, the release of aircraft wreckage, the release of data and/or information and the final factual reporting of airplane crash investigations thereby delaying and denying justice and Due Process for Plaintiffs and others similarly situated.

50. The NTSB, through its officers, employees and/or its agents, including party participants, continues to this day to obstruct the fair administration of justice and Due Process by preventing Plaintiffs' access to evidence and facts related to airplane crashes.

51. The NTSB, though its officers, employees and/or its agents, including party participants, continues to this day to obstruct, withhold and/or destroy evidence of airplane crashes, which evidence includes photographs, notes, manuals, and other evidence and only allows crash victims access to its "Public Docket" which contains only those photographs, notes,

manuals and other evidence selected by the NTSB with the sole input of the manufacturer party participants who are putative defendants in lawsuits arising from the crash.

52.     The NTSB's obstruction of justice, collusion with manufacturers and intentional delay is a violation of Plaintiffs' rights to Due Process under state and federal Constitution and laws.

WHEREFORE, Plaintiffs seek an Order compelling the NTSB to immediately release any and all documents, data and evidence that relates to each of the respective airplane crashes complained of herein and such other and further relief as the Court may deem just and proper.

## COUNT II
### *Violation of the Freedom of Information Act*

53.     Plaintiffs fully incorporate by reference paragraphs 1 through 52 herein.

54.     Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(6)(A)(i), the NTSB shall determine whether to comply with a request and notify the requester of the determination within twenty (20) business days from the date the request was received.

55.     Under the Freedom of Information Act, if the NTSB encounters "unusual" circumstances which require an extended period of time to process the request, the Defendant must provide the requester with written notice "setting forth the unusual circumstances for such an extension and the date on which a determination is expected to be dispatched.  No such notice shall specify a date that would result in an extension for more than ten days, except as provided in clause (ii) of this paragraph."  5 U.S.C. § 552(a)(6)(B)(i).

56.     Under the Freedom of Information Act, if the NTSB extends the time limits, it shall notify the requestor and provide an opportunity to limit the scope of the request so that it may be processed within the time limit or arrange an alternative time limit.  5 U.S.C. § 552(a)(6)(B)(ii).

57. As of the date of the filing of this Complaint, the statutorily mandated deadlines for Plaintiffs' requests have passed, the NTSB has not processed Plaintiffs' requests, indicated any unusual circumstances for the delay, or indicated a projected date when Plaintiffs' requests will be processed.

58. The Freedom of Information Act, Section 552(a)(6)(C) states that "[a]ny person making a request to any agency for records. . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."

59. Plaintiffs have exhausted administrative remedies provided by the Freedom of Information Act.

WHEREFORE, Plaintiffs seek an Order compelling the NTSB to immediately release any and all documents, data and evidence that relates to each of the respective airplane crashes complained of herein and such other and further relief as the Court may deem just and proper.


Dated:  September 8, 2014

*s/ John J. Gagliano*
John J. Gagliano, Esquire
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103
(215) 545-4220
Fax: (215) 545-5252
jgagliano@airlaw.com
courtfilings@airlaw.com
*Attorneys for Plaintiffs*